IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JIMMY D. KILPATRICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:05-CV-1190-VPM |
| | ) |
| JO ANNE B. BARNHART | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401, alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claim.

The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3).

---

[1]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the United States Magistrate Judge (docs. 7-8, filed January 19, 2006). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be .

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[2] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

(1)   Is the person presently unemployed?

(2)   Is the person's impairment severe?

(3)   Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of Impairments*]

(4)   Is the person unable to perform his or her former occupation?

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> (5)   Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[3]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III. THE ISSUES

*A.   Introduction*

The plaintiff was 57 years old at the time of the hearing before the ALJ and has a fifth grade education. The plaintiff's prior work experience includes work as a warehouse laborer, peanut gin laborer, mechanic's helper, maintenance technician, machine operator, and forklift operator. Following the administrative hearing, the ALJ concluded that the plaintiff had one severe impairment: diabetes mellitus. Nonetheless, the ALJ concluded that the plaintiff was not disabled because the plaintiff had the residual functional capacity to perform his past relevant work as a warehouse laborer, peanut gin laborer, machine operator, or forklift operator, and to perform a full range of medium level work.

*B.   Plaintiff's Claims*

The plaintiff presents five issues for review: (1) Whether the ALJ's finding that the plaintiff could perform a full range of medium work was supported by substantial evidence;[4] (2) Whether the ALJ improperly failed to order a consultative mental evaluation; and (3) Whether new evidence submitted to the Appeals Council warrants remand under *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).

---

[4] The plaintiff's arguments that gout, degenerative disc disease, neuropathy, and retinopathy should have been considered as "severe" impairments will be addressed under this heading.

IV.   **DISCUSSION**

A.   *Residual Functional Capacity*

1.   Introduction.

The plaintiff argues that the ALJ's determination that he can perform a full range of light work is unsupported by substantial evidence.

In this case, the ALJ found that the plaintiff could perform several of his past relevant jobs (R. 19-20, 21). If this determination is supported by substantial evidence, then the court need not consider the broader ruling under 20 C.F.R. § 404.1520(f). Under 20 C.F.R. § 404.1560(b)(3), a well-supported finding that the plaintiff can perform past relevant work is conclusive, and requires no further analysis of age, education, experience, or whether the past relevant jobs exist in significant numbers in the national economy.

2.   **Back and Hip Problems**

The plaintiff objects to the ALJ's analysis of his back and hip problems. The ALJ wrote:

> The claimant alleges problems with his lower back and right hip. In August 2003, when the claimant was hospitalized while incarcerated, his lower back examination was within normal limits. There was no pedal edema, joint effusion, or peripheral edema. The examiner opined that the claimant was neurologically intact [R. 136, 139-40]. On June 29, 2004, Richard Meadows, D.O., performed a physical consultative examination and noted tenderness in the lumbar spine. However, the claimant's range of motion was normal. Furthermore, Dr. Meadows noted that the claimant walked without the aid of an assistive device [R. 166, 171]. Richard

> Bendinger, Jr., D.O., the claimant's primary care physician, noted that the claimant had complaints of pain in his hip and prescribed Ultracet.  However, the claimant's range of motion was intact in both lower extremities.  Furthermore, his strength was 5/5 [R. 192].  *No medical source has suggested that the claimant's lower back or right hip problem would have a significant impact on his ability to perform basic work activities*.  Therefore, the undersigned concludes that the claimant's lower back and right hip problem is a non-severe impairment...

(R. 16) [Emphasis supplied].

At least one medical source *did* find that these problems would affect his ability to perform work activities.  Dr. Meadows found degenerative disc disease and wrote that the plaintiff's "ability to walk, lift, and carry is impaired because of his complaint of back pain and tenderness..." (R. 166).  Dr. Bendinger also wrote a brief note dated "5/4" saying that the plaintiff "is totally disabled @ has Retinopathy, Neuropathy [unreadable] due to Insulin Dependent diabetes - He has severe chronic back & leg pain.  I would say he is totally disabled.  This is unlikely to change over the next 5 years"[5,6]  (R. 193).

The ALJ's conclusion  - in italics above -  is therefore incorrect.  However, under the

---

[5] The ALJ interpreted this statement as saying that the plaintiff was disabled due to diabetes, and also had back and leg pain (R. 17, 19).  Independent review suggests that Dr. Bendinger was not so specific, and the court will treat the statement as saying that back pain was part of the plaintiff's disabling condition.  The court nonetheless notes that in a letter written four months later, Dr. Bendinger described the plaintiff's "current condition" as "poorly controlled diabetes" with no mention of back and leg pain (R. 17, 172), thereby supporting the ALJ's interpretation.  Records later submitted by the plaintiff suggest that the statement is from 2005 (R. 199).

[6] Dr. Bendinger was the plaintiff's treating physician; but, as shown below, the ALJ adequately demonstrated that the record supported a conclusion contrary to Dr. Bendinger's, and therefore was not bound by Dr. Bendinger's opinion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

circumstances of this case, the error was harmless. As described by the plaintiff himself (and as noted by the ALJ), the plaintiff's back problems affected his ability to carry, but not to lift (R. 17-18, 221). As described in the Department of Labor's *Dictionary of Occupational Titles* (listing 921.683-050), the job of forklift operator, as usually performed, requires some lifting but no carrying. As described by the plaintiff himself (R. 90-91), the job as he performed it required no lifting or carrying at all. Similarly, the plaintiff described his peanut gin and machine operator jobs as requiring no lifting or carrying (R. 92-93, 219-220).

The plaintiff described the machine operator job as requiring constant walking or standing (R. 93, 219), but the other two jobs required no walking or standing (R. 91-92, 219).[7] The ALJ further supported his finding that these impairments were not disabling (and discounted the plaintiff's subjective complaints of pain and fatigue[8]) by citing the plaintiff's work activities and activities of daily living after his alleged date of onset, which coincided with his incarceration rather than with any medical event (R. 17-18). Independent review of the record supports his findings (R. 64, 82-83, 136, 222-25, 230, 233-36). Thus, while the

---

[7] As described by the plaintiff, his peanut-gin job could be performed standing or sitting (R. 219).

[8] The plaintiff notes that the ALJ said the plaintiff "testified that he only takes over-the-counter pain medications, which is inconsistent for someone with disabling pain" (R. 18). This statement accurately describes the plaintiff's application for benefits (R. 71, 82) but not his testimony (R. 220, 226; *see also* R. 116, a later medications list filled out by the plaintiff's attorney). The plaintiff testified that he took one prescription pill for pain (meloxicam, or Mobic) per day, but that fact does not nullify the ALJ's finding that the plaintiff's treatment was "conservative" (R. 19), or his other reasons for finding that the plaintiff was not generally disabled by pain (see below). The court therefore concludes that the ALJ's error was harmless.

ALJ's finding that the plaintiff could perform a "full range of medium work" may not be well supported with respect to the plaintiff's back, his finding that the plaintiff could perform some of his past relevant work is unaffected by any such error.

The plaintiff also argues that the ALJ erred by not finding his degenerative disc disease to be a "severe" impairment. However, the ALJ did find that the plaintiff had a severe impairment (diabetes) and therefore proceeded past step two of the five-step analysis. Furthermore, as shown above, the ALJ adequately considered the plaintiff's back problems. Any error he committed in failing to classify degenerative disc disease as "severe" was harmless. *See Jackson v. Heckler*, 592 F. Supp. 1124, 1126-27 (D. C. Ill. 1984) (failure to find one complaint "severe" was harmless error, when the ALJ proceeded past step two and properly considered all impairments in deciding whether the plaintiff could perform past relevant work); *see also Street v. Barnhart*, 340 F. Supp. 2d 1289, 1293-94 (M.D. Ala. 2004). The decision of the ALJ is not reversible on this ground.

### 3.     **Antisocial Personality Disorder**

Page 158 of the record is a psychological update form, dated 19 August 2003, from the plaintiff's stay in prison. The upper part of this form states that "[The plaintiff] was last evaluated by ADOC psychology staff member C. Goltry on 2/27/01 [twenty-six months before the alleged date of onset in April 2003]. A diagnosis of antisocial was made and the inmate was recommended for participation in [the Substance Abuse Program]." The lower part of this form describes the plaintiff as an alcoholic with an "inability/lack of motivation

to stop drinking," and his mental health code is given as "NONE."  The form was completed by "Barbara Jack" (not otherwise identified), who recommended a substance abuse program but listed no other mental health needs.[9]

On the basis of this form, the plaintiff now (and only now) argues that he was diagnosed with Antisocial Personality Disorder (APD), and that the ALJ erred in not mentioning this diagnosis.  The record, however, does not clearly show a diagnosis of APD at all (especially since the only treatment prescribed was enrollment in a substance abuse program).  Neither does the record show that "C. Goltry" reached any such conclusion using "acceptable clinical and laboratory diagnostic techniques," as required for consideration under 20 C.F.R. § 404.1508, or that any such condition persisted until the plaintiff's alleged date of onset.[10]

The plaintiff did not claim APD as an impairment, and no record evidence except this one note on a prison record even suggests it.  *See* 20 C.F.R. §§ 404.1512(a), (c); *McCray v.*

---

[9] The ALJ cited this form (R. 16) as evidence of the plaintiff's prior abuse of alcohol, but based on the plaintiff's testimony and the report of Dr. Meadows concluded that the plaintiff had overcome his alcoholism and was no longer impaired by it.

[10] Indeed, the record fails reflect that C. Goltry was even qualified by education or experience to make the determination that the plaintiff urges.  The American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* 701 (4th ed, 1997) (*DSM-IV*), describes APD as "a pervasive pattern of disregard for, and violation of, the rights of others that begins in childhood or early adolescence and continues into adulthood."  The *DSM-IV* further cautions that when, as here, "antisocial behavior in an adult is associated with a Substance-Related Disorder, the diagnosis of Antisocial Personality Disorder is not made unless the signs of Antisocial Personality Disorder were also present in childhood and have continued into adulthood."  The record is devoid of any such signs.

*Massanari*, 175 F. Supp. 2d 1329, 1339 (M.D. Ala. 2001) (Social Security Administration will only consider impairments of which the plaintiff informs it, or of which the Administration receives evidence). Under the circumstances, the ALJ was not legally required to address APD. The decision of the ALJ is not due to be reversed on this ground.

### 4. Diabetic Neuropathy and Calluses

The plaintiff argues that the ALJ improperly failed to make a specific finding regarding the severity of the plaintiff's diabetic neuropathy. However, as noted by the government, the ALJ found that the plaintiff's diabetes was a severe impairment. Diabetic neuropathy and retinopathy are classified in the *Listing of Impairments* as symptoms of diabetes rather than as separate impairments, and the ALJ was not required to make a separate "severity" ruling on this impairment. Moreover, as the plaintiff notes, the ALJ did discuss the plaintiff's diabetic neuropathy.

The ALJ incorrectly wrote that "the claimant testified that he does not have to lie down during the day, nor does he have any problems sleeping at night, which is inconsistent for someone with disabling diabetic neuropathy";[11] however, the ALJ properly considered the plaintiff's ability to walk without an assistive device, full range of motion in the lower extremities, and ability to heel and toe walk (R. 17-18). Listing 9.08A in the *Listing of*

---

[11] The observations that the plaintiff did not need to lie down during the day and showed a normal sleep pattern - which were supported by the record - more properly pertain to his complaints of constant fatigue.

*Impairments* (diabetes mellitus, neuropathy) requires "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of...gait and station," and the ALJ correctly and adequately addressed the plaintiff's ability to walk in determining that he was not disabled by his diabetes.  Any error he committed in connecting the plaintiff's sleep patterns to his neuropathy was harmless.

The plaintiff states that the ALJ described the removal of the plaintiff's foot calluses in 2003 (R. 18), but failed to document the heavy calluses observed by Dr. Meadows in 2004. The plaintiff's statement is incorrect.  While the ALJ did not mention Dr. Meadows' observation of calluses on page 18, he did mention it on page 16 and considered the plaintiff's calluses in his discussion of the plaintiff's difficulties with prolonged standing and walking on page 17.  The decision of the ALJ is not due to be reversed on this ground.

### 5. Nerve Damage and Atrophy

The plaintiff notes that Dr. Meadows measured his thigh circumferences as 56 and 58 centimeters, respectively (R. 165).  The plaintiff argues that this is a sign of muscle atrophy and thus of nerve damage, and that the ALJ erred in not considering it.  However, the plaintiff presents no objective medical evidence suggesting that these measurements show atrophy, and did not present this argument, or any such evidence, to the ALJ.  *See* 20 C.F.R. §§ 404.1512(a), (c); *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1339 (M.D. Ala. 2001) (Social Security Administration will only consider impairments of which the plaintiff informs

11

it, or of which the Administration receives evidence).

As noted by the ALJ, a 2003 examination showed that the plaintiff was "neurologically intact" (R.16, 140), and Dr. Meadows did not mention atrophy or associated nerve damage in the musculoskeletal and neurological sections of his report (R. 165-66). The decision of the ALJ is not due to be reversed on this ground.

### 6.     Temperature Limitations

The ALJ gave "some weight" to the report of a consulting physician, who found that the plaintiff should avoid concentrated exposure (as opposed to "moderate" or "all" exposure) to extreme heat and cold (R. 101).  In considering this report, the ALJ said that "the objective evidence does not support the additional postural and environmental limitations" and did not apply these limitations in his residual functional capacity determination (R. 19, 21).  The plaintiff argues that this finding is unsupported, and that diabetic neuropathy (which the ALJ notes) "causes sensitivity to extreme temperatures," so that the ALJ should have applied these limitations.

However, the plaintiff cites no authority for this proposition.  Furthermore, according to the *Dictionary of Occupational Titles*, the job of forklift operator as usually performed requires "no" exposure to extreme heat or cold (Department of Labor, *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles* (1993), Part A, listing 921.683-050), and the plaintiff's descriptions of his other past relevant work convince the court that *concentrated* exposure to *extreme* heat or cold was no part of this

work.  Accordingly, any error in the ALJ's failure to apply these limitations was harmless, thus immunizing his finding from reversal.

### 7. Diabetic Retinopathy

The plaintiff argues that the ALJ improperly failed to make a specific finding regarding the severity of the plaintiff's diabetic retinopathy.  The government emphasizes the ALJ's finding the plaintiff's diabetes was a severe impairment.  Diabetic neuropathy and retinopathy are classified in the *Listing of Impairments* as symptoms of diabetes rather than as separate impairments, and the ALJ was not required to make a separate "severity" ruling on this impairment.  Moreover, as the plaintiff acknowledges, the ALJ did discuss the plaintiff's diabetic retinopathy (R. 18-19).

As the plaintiff observes, Dr. Meadows said that the plaintiff's visual acuity was "affected" by retinopathy (R. 166), specifically that his visual acuity was 20/70 in the right eye and 20/50 in the left eye "without corrective lenses" (R. 165).[12]  As the ALJ stated, the plaintiff told Dr. Stone (the endocrinologist who treated his diabetes in 2003) that he could not read the numbers on his insulin syringe "because he did not have his glasses" (R. 18, 146) (implying that he could read small numbers with his glasses).  Dr. Meadows did not observe retinopathy directly, or any eye symptoms other than reduced acuity (R. 18, 164, 167).

---

[12] The plaintiff's statement that the record contains no eye exam results is thus shown to be incorrect, and the plaintiff's argument that the ALJ should have ordered a consultative eye exam is rejected.

13

In any case, the numbers reported by Dr. Meadows do not imply disability. Listing 9.08C in the *Listing of Impairments* (diabetes mellitus, retinopathy) refers to listing 2.02 for reduced visual acuity. Listing 2.02 requires "[r]emaining vision in the better eye after best correction [of] 20/200 or less" for a finding of disability, and Dr. Meadows' observation of 20/50 acuity *without* correction falls far short of this standard. The record adequately supports the ALJ's finding that the plaintiff was not disabled due to retinopathy.

### 8.   Gout

The plaintiff argues that the ALJ should have considered his gout as an impairment. The plaintiff did not list gout among his impairments when he applied for benefits. The plaintiff's attorney, but not the plaintiff, said at the hearing that the plaintiff "had a diagnosis of gout and was on medication, Allapurinol, an anti-inflammatory medication, since 2004. He has trouble in both ankles with gout and that still continues" (R. 211). The plaintiff correctly states that he was diagnosed with gout in 2004 (R. 156). According to Dr. Bendinger's notes, he "complained of" gout in 1998 (R. 180) and suffered from "acute" gout in 1999 (R. 179).

The record is devoid of evidence that gout significantly affected the plaintiff's ability to work on the date of the hearing. Furthermore, the ALJ considered the plaintiff's feet and ankles in his discussion of the plaintiff's ability to walk, observing that the plaintiff had a full range of motion in his feet and ankles, and that he was able to walk and felt better when walking, had no tenderness or swelling in his extremities, could walk heel-to-toe without

difficulty, and walked without any ambulatory aid (R. 17-18).

The ALJ considered the plaintiff's work and other activities after the alleged date of onset in determining that he was not disabled. Any impact of gout on the plaintiff's ankles was subsumed in the evidence the ALJ did consider. For all of these reasons, his failure to discuss gout explicitly was not error.

### 9. Nonexertional Limitations

The plaintiff argues that, in order to support his finding that the plaintiff could perform a full range of medium work, the ALJ implicitly and wrongly found that the plaintiff had no nonexertional limitations. The court pretermits discussion of this issue because the ALJ adequately supported his finding that the plaintiff could perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), (g); *Holley v. Chater*, 931 F. Supp. 840, 844 (S.D. Fla. 1996) ("If the claimant is able to perform past relevant work, the claimant is not disabled and the analysis ends"). The full-range determination was unnecessary.

### B. *Mental Examination*

The plaintiff argues that the ALJ should have ordered a consultative mental examination, because the plaintiff left school in 1963 at age fifteen with a fifth-grade education. The plaintiff now suggests that his lack of education - a fact supported by the record - may have resulted from borderline intellectual functioning - a supposition which is not. The ALJ has "complete discretion" over consultative testing, and it is required only

15

when the record as a whole is not sufficient to support an informed decision. 20 C.F.R. § 1519a(b); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984).

In the instant case, nothing, save a mere suggestion by the plaintiff in his appeal brief that he "must have" been held back in school, suggests any mental (as opposed to educational) limitation. This does not, without more, create an evidentiary gap requiring an examination. *See* 20 C.F.R. §§ 404.1512(a), (c); *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1339 (M.D. Ala. 2001) (Social Security Administration will only consider impairments of which the plaintiff informs it, or of which the Administration receives evidence, and lack of education does not raise the issue of mental retardation so as to require an examination); *see also Jones v. Bowen*, 660 F. Supp. 1115, 1121 (C.D. Ill. 1987).

### C.     *New Evidence*

The plaintiff argues that new evidence presented after the ALJ's hearing requires a remand under *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). When, as here, the Appeals Council has denied review, the court "will only look to the evidence presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence," but will still consider later evidence submitted to the appeals council in deciding whether to remand. *Falge*, 150 F.3d at 1323.

A claimant seeking to introduce evidence post-hearing must establish that (1) new, noncumulative evidence exists; (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result; and (3) good cause

exists for the applicant's failure to submit the evidence at the appropriate level. *Butler v. Barnhart*, 347 F. Supp. 2d 1116, 1124 (M.D. Ala. 2003), *citing Falge*, 150 F. 3d at 1323; *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).

The ALJ held the hearing on 17 May 2005 (R. 207) and rendered his decision on 22 July 2005 (R. 204). The plaintiff submitted the new evidence to the appeals council on September 2, 2005. The new evidence consists of five pages of notes and test results (R. 198-202). Three of these pages are dated January-March 2005, and the plaintiff has not shown good reason for failing to acquire them before the hearing and present them to the ALJ. Thus, the court will not consider them.[13] *Fremd v. Barnhart*, 412 F. Supp. 2d 1245, 1259 (M.D. Ala. 2005); *Butler*, 347 F. Supp. 2d at 1124.

The other two pages (R. 200, 202) consist of lab results from a blood test in August 2005. The plaintiff does not explain the reasonable likelihood that these results would change the administrative result, and independent review does not support the idea that they do. The evidence is therefore not material, and does not support remand.

---

[13] One note (R. 199) dated March 25, 2005, reads as follows: "Pt phoned request work excuse stating he is unable to stand on job, c/o Dr. Bendinger OV to eval before can ok note." A later note on the same page says, "Request letter not able to work required for hearing for disability," and a later note (date unreadable) states, "Pt totally disabled due to back disable/fin disc dg, Diabetes Neu[ropathy] Diabetes, Ret[inpoathy]." These appear to be the background for, and completely cumulative with, Dr. Bendinger's note (R. 193), which the ALJ considered (R. 19). If anything, they slightly detract from that note, since they suggest that the plaintiff first requested an "inability to stand" finding and only later asked for a "totally disabled" finding. Thus, these records would not support a remand even if the court could consider them.

## V.  CONCLUSION

The court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed. A separate order will issue.

DONE this 4th day of October, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA P. MCPHERSON
UNITED STATES MAGISTRATE JUDGE